FELICE JOHN VITI, Acting United States Attorney (7007)
JOEL A. FERRE, Assistant United States Attorney (7517)
ANNE E. RICE, Assistant United States Attorney (7971)
Attorneys for the United States
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
joel.ferre@usdoj.gov
anne.rice@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| LORI CHAVEZ-DEREMER, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>SKYWEST INFLIGHT ASSOCIATION,<br><br>Defendant. | **COMPLAINT** |

Plaintiff Lori Chavez-DeRemer, Secretary of Labor, alleges as follows:

**NATURE OF THE ACTION**

1.  Plaintiff Secretary Lori Chavez-DeRemer files this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 481-83, to invalidate the results of an election held by SkyWest InFlight Association (SIA), a local labor organization, from January 21-28, 2025 (the "January 2025 election"), for failure to comply with federal labor laws and regulations. The Secretary requests the court order a new election supervised by the Department of Labor (DOL) with new nominations for National President and National Secretary.

2. After receiving complaints from SIA members, the DOL investigated and found that SIA violated Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), by:

    a. Failing to provide members a reasonable opportunity to nominate candidates for the January 2025 election and instead only permitting incumbent executive board members to nominate candidates;

    b. Imposing the candidate eligibility requirement that a candidate for an Executive Leader office have either prior experience as a National Representative for SIA or demonstrated prior experience in a comparable leadership position within the last five calendar years; and

    c. Denying a member due process by improperly disqualifying the member from being a candidate for National President where SIA did not provide proper notice of the charges and disqualification for an alleged breach of duty of loyalty.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

4. This Court may exercise personal jurisdiction over SIA because SIA maintains its principal office in this district.

5. Venue is proper in this district pursuant to 29 U.S.C. § 482(b); 28 U.S.C. § 1331; 28 U.S.C. § 1345; and 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff Lori Chavez-DeRemer is the Secretary of the United States Department of Labor. Acting through its Secretary, the Department of Labor is authorized to bring this action under the LMRDA, 29 U.S.C. § 482(b).

7. SIA is, and always relevant to this action has been, an unincorporated association residing within, and maintaining its principal office in, Salt Lake County, Utah, within the jurisdiction of this district.

## FACTUAL ALLEGATIONS

8. SIA has existed as a labor organization since 1994.

9. SIA is the only labor organization that represents SkyWest Airlines flight attendants. As such, it is the only authorized representative body SkyWest Airlines recognizes to speak and negotiate on behalf of SkyWest Airlines' flight attendants.

10. SIA has approximately 4,600 members dispersed across the United States, Canada, Mexico, and the Bahamas.

11. Any SkyWest flight attendant who is on the seniority list and has successfully completed an initial operating experience is a SIA member.

12. SkyWest Airlines funds SIA's operations such that SIA's members pay no membership dues.

13. SIA describes itself as a national labor organization.

**SIA is a Local Labor Organization under the LMRDA**

14. SIA interacts with SkyWest Airlines management on behalf of its members to "mak[e] and maintain[] employment agreements covering rates of pay, rules, and working conditions for SIA Members." SkyWest Inflight Association Constitution and Bylaws, revised August 12, 2024 (the "Bylaws"), § 2.

15. SIA is not and has never affiliated with subordinate or parent labor organizations; SIA is the organizational body closest to its membership.

16. SIA fulfills the following functions and purposes that are typical of local labor organizations:

   a. Holding board meetings where official business is conducted and allowing SIA members to attend;

   b. Disciplining SIA members and officers;

   c. Negotiating collective bargaining agreements with SkyWest;

   d. Negotiating the policies and procedures of SkyWest's Inflight Operations Department;

   e. Entering into agreements with SkyWest that govern the terms and conditions of employment of SIA members;

   f. Negotiating employee grievance, corrective action, and termination policies with SkyWest and representing SIA members in adverse employment actions against SkyWest;

   g. Permitting SIA members to submit official grievances against SkyWest through SIA's website;

   h. Reviewing aggrieved SIA members' files and discussing grievance issues with management;

   i. Negotiating employee grievance policies wherein SIA considers the facts presented by the flight attendant, decides whether the grievance is valid, and discusses the grievance with SkyWest without the employee being present.

**SIA Did Not Notify Members of Nominations for the January 2025 Election**

17. SIA is governed by Executive Leaders (which include the National President, National Vice President, and National Secretary), and a National Representative Board

(comprised of at least seven Representatives). Collectively, SIA's Executive Leaders and National Representative Board are referred to as the "Executive Board."

18. SIA holds monthly Executive Board meetings at various locations, rotating through SIA's twenty domiciles across the United States.

19. The dates and locations of the monthly Executive Board meetings are posted on SIA's website.

20. SIA members have the right to attend Executive Board meetings if they notify the Executive Board five days prior to the meeting. While members may attend Executive Board Meetings, SIA members have no right to vote at those meetings and may only speak if they request time on the agenda.

21. At all times relevant to this action, SIA was governed by the Bylaws.

22. Section 16(C)(1) of the Bylaws provides,

> Any Member in good standing may self-nominate, nominate, or be nominated by another Member in good standing (see Section 9 Membership) for a National Board Representative position by filing a candidate intent form by the date and time specified to provide their notice of candidacy and be considered.

23. Section 16(C)(1)(b) of the Bylaws provides, "The Board shall announce to Members when nominations (candidate intent forms) will be accepted at least 60 days prior to the end of the term for National Board Representatives."

24. The Bylaws do not contain any provision regarding the method for nominating Executive Leader candidates or for notifying members of nominations for Executive Leadership positions.

25. SIA held its October 2024 Executive Board meeting in Detroit, Michigan, where the Executive Board announced that nominations for the January 2025 election would take place at the November 2024 Executive Board meeting.

5

26. No SIA members, other than the incumbent Executive Board officers, attended the October 2024 Executive Board meeting.

27. SIA did not issue a notice of nominations for the January 2025 election to SIA members, nor did it use any other method reasonably calculated to inform all members that nominations for the January 2025 election would take place at the November 2024 Executive Board meeting.

28. SIA held its November 2024 Executive Board meeting in Palm Springs, California.

29. Nominations for the January 2025 election were held at the November 2024 Executive Board meeting.

30. As SIA expected, because it provided its members no notice of nominations, no SIA members, other than incumbent Executive Board officers, attended the Executive Board meeting.

31. During the November 2025 Executive Board meeting:

    a. Incumbent President Brent Coates nominated himself as a candidate for National President in the January 2025 election and accepted the nomination;

    b. National Representative Don Spurgeon was nominated, and accepted his nomination, as a candidate for National President in the January 2025 election;

    c. National Representative Kyle Bessone nominated himself as a candidate for National Secretary in the January 2025 election and accepted the nomination; and

    d. Incumbent National Secretary Stacey Quinn nominated herself as a candidate for National Secretary in the January 2025 election and accepted the nomination.

32. SIA's Executive Board—whose members had just nominated themselves—found that Coates, Spurgeon, Bessone, and Quinn met the qualifications to run for office.

33. At least one SIA member—Alexis Reusser-Lenhart—would have nominated herself or Amy Hurst as a candidate for National President had she been made aware that nominations for the January 2025 election were held at the November 2024 Executive Board meeting.

**SIA Imposed Unreasonable Candidate Qualifications for the January 2025 Election**

34. An earlier version of SIA's bylaws, dated March 27, 2024, stated that SIA's President and Secretary would be nominated by incumbent members of the Board.

35. SIA has since amended its March 27, 2024 bylaws and replaced that requirement with Section 14(D)(3)(c) of the Bylaws in effect for the January 2025 election, which provides:

> A National Representative running for an Executive Leader position must: have one (1) of the following: i. Previous experience as a National Board Representative (preferred); or ii. Demonstrated comparable leadership position in a similar organization within the last five (5) calendar years[.]

36. Section 13(B) provides, "Executive Leaders are National Representatives who are elected to an Executive Leadership position."

37. Only incumbent Executive Board officers were nominated as candidates for National President and National Secretary in the January 2025 election.

38. Because only incumbent Executive Board members were notified of and attended the November 2024 nominations meeting, the "comparable leadership" experience provision did not apply to disqualify nominees in the January 2025 election.

**SIA Improperly Disqualified Amy Hurst as a Candidate in the January 2025 Election**

39. Under Section 14(A) of the Bylaws, to be a candidate for elected office, a member must, for the duration of their candidacy, be a member in "good standing."

7

40. Section 9(C)(1)(a) of the Bylaws defines good standing:

> A Member is in good standing (as defined in the LMRDA) unless the Member expressly (whether verbally or in writing) admits, or is determined by the National Board based on an appropriate investigation, to be engaging in, or to having engaged in during the twelve-month period preceding and including the date of such admission or determination . . . advocating or working toward the displacement of SIA as the authorized national labor representative to speak and negotiate on behalf of SkyWest's Flight Attendants[.]

41. Around November 4, 2023, SIA member Amy Hurst complained to SkyWest Airlines' human resources division that Coates and other SIA officers sent a communication to SIA members that included her name without her consent. In her complaint, Hurst stated that SIA officers told her they did not need her consent to include her name in the communication.

42. A few weeks later, Hurst posted on social media that she had signed a union card for a rival labor organization because she believed SIA was not a labor organization under federal laws.

43. About a month later, Hurst emailed SIA's Executive Council, which included Coates and now National Vice President Loretta France, declaring her intent to run in SIA's January 2024 election for a Representative position.

44. SIA notified Hurst on December 29, 2023, that she was disqualified from running in the January 2024 election for breaching a duty of loyalty by "recently and publicly [speaking] and act[ing] against SIA in regard to its continuing to be the representative of SkyWest's Flight Attendants," and by advocating for a different organization to "ostensibly replace SIA" based on her November social media post.

45. On January 3, 2024, Hurst emailed SkyWest Airlines' human resources division about alleged actions by a member of SIA's leadership.

46. Later, SIA announced a September 2024 election. Hurst nominated herself to run for a National Board of Representative position in that election.

47. On August 20, 2024, the Board of Representatives sent Hurst a "Notice of Standing" that barred Hurst from being a candidate in the September 2024 election because, in SIA's view, her November 2023 social media post violated Section 14 of the Bylaws.

48. The Notice of Standing did not contain or reference any possible negative impacts to her SIA membership status beyond disqualification as a candidate in the September 2024 election.

49. Hurst timely appealed her disqualification to SIA leadership, and on August 23, 2024, Vice President France emailed Hurst to schedule a hearing.

50. Days later, France offered hearing dates of August 26 and 27, 2024. In France's emails attempting to schedule a hearing, she did not mention that Hurst could call or cross-examine witnesses, or that any discipline could extend beyond Hurst's disqualification from the September 2024 election.

51. A video conference hearing was held on August 26, 2024.

52. Hurst, France, Coates, and other SIA officers participated in the video conference.

53. From France's statements during the video conference, Hurst understood that the conference was limited to Hurst's eligibility to run for office in the September 2024 election.

54. During the video conference, Hurst was not informed that any consequences could affect her other membership rights, or that she could call her own witnesses or cross-examine those called by SIA.

55. To support the Board of Representatives' claim that Hurst was disloyal to SIA, France presented statements about the function of union authorization cards, SIA's status as a labor organization, and SIA's legal representation at a specific time.

56. When Hurst attempted to rebut one of France's statements during the video conference, Coates interrupted to say the purpose of the video conference was not to argue but to hear about Hurst's charge of disloyalty.

57. On August 27, 2024, France, on behalf of the Board of Representatives, denied Hurst's appeal and affirmed the Notice of Standing.

58. In early September, Hurst requested to further appeal her disqualification before either an arbitrator or an ethics panel as outlined in SIA's Bylaws.

59. In response, SIA emailed a former coworker of SIA's legal counsel (Gregg Formella) to arbitrate Hurst's dispute.

60. The arbitrator responded to an email Formella had sent (but did not copy Hurst) on September 4, 2024, at 1:38 p.m. and outlined several terms Hurst and SIA would need to accept for the arbitration to proceed. Among those terms were:

    a. Affirmatively waive any conflicts arising from the arbitrator's former working relationship with Formella;

    b. Pay $1,000 each; and

    c. Appear the next day, September 5, 2024, for the arbitration, with a decision issued by September 6, 2024.

61. At 4:50 p.m. on September 4, 2024, France emailed Hurst to disclose the $1,000 fee Hurst would have to pay as well as the process and timeline for submitting evidence to the arbitrator. France's email did not disclose the arbitrator's potential conflict of interest.

10

62. At 7:53 p.m. on September 4, 2024, France forwarded an email from the arbitrator to Hurst that disclosed, for the first time, the potential conflict of interest.

63. At 1:23 p.m. on September 5, 2024, France emailed the arbitrator that Hurst had not responded to the arbitrator's proposal, and that "[o]f course, if Ms. Hurst does not meaningfully respond by whatever deadline you may determine appropriate for her to do so, SIA's position would be that Ms. Hurst has abandoned her appeal and lost any right to proceed with it."

64. At 1:42 p.m. on September 5, 2024, the arbitrator emailed France and Coates (but did not copy Hurst) stating that submissions had to be filed by 6:00 p.m. that day for the arbitration to proceed.

65. At 11:06 p.m. on September 5, 2024, Hurst objected to the arbitrator's fee and his conflict of interest, stating, "I do not . . . consent to having an attorney that has worked with SIA's legal counsel. Nor do I agree to the fee's [sic]. I requested a FAIR and UNBIASED appeal." Hurst also wrote: "[i]f SIA wishes me to pay I will request that an individual of my choosing be used."

66. On September 9, 2024, Coates emailed Hurst that SIA considered Hurst to have abandoned her appeal, and that "the determination of your ineligibility to run for office stands[.]"

67. Since the September 9, 2024, email from Coates, SIA has not initiated any new disciplinary proceedings against Hurst.

68. On January 9, 2025, Hurst emailed SIA to express her intent to run for National President in the January 2025 election.

69. On January 18, 2025, France responded to Hurst's January 9, 2025, email, stating that based on the August 20, 2024 "Notice of Standing" (and the Board's affirmation of that

11

notice), Hurst was ineligible for consideration as a candidate in any SIA election until her privileges are reinstated on August 27, 2025.

70. On information and belief, Hurst was the only SIA member that was declared ineligible to be a candidate in the January 2025 election.

**SIA's January 2025 Election**

71. Between January 21-28, 2025, SIA held an election for National President and National Secretary, which was conducted by secret ballot among SIA's members in good standing.

72. France served as the election chair for the January 2025 election.

73. SIA used a third-party vendor, ElectionBuddy, to conduct the election via electronic voting.

74. ElectionBuddy mailed an election notice to all SIA members at the end of December 2024.

75. On January 20, 2025, SIA posted a list of candidates for the January 2025 election on its Facebook page.

76. Voting for the election opened at 8:00 a.m. MT January 21, 2025, and closed at 5:00 p.m. MT on January 28, 2025.

77. Coates was elected as National President by a margin of 63 votes (564 votes for Coates and 501 votes for Spurgeon).

78. Bessone was elected as National Secretary by a margin of 61 votes (563 votes for Bessone and 502 votes for Quinn).

79. Coates and Bessone will serve four-year terms[1] as National President and National Secretary, respectively.

**SIA Members Timely Protest the January 2025 Election**

80. Section 19(C)(1) of the Bylaws outlines the process for appealing the election:

> Any Member who is eligible to vote in a given election and who has a concern with or wishes to appeal the election process or outcome shall, if desired, appeal to the Board in writing immediately upon identifying a specific concern and in any event (non-awareness notwithstanding) no later than seven (7) calendar days following the certification date.

81. The Bylaws, in Section 19(C)(3), also require the Board to "render a decision within a reasonable timeframe following the receipt of an election challenge."

82. Section 19(C)(4) of the Bylaws provides deadlines and further procedures for appeals:

> Within seven (7) calendar days of the Board's decision and notification, the Member may further appeal in writing for the Board's referral, at its discretion, to the Arbitrator or an Ethics Panel Review (Section 20).

83. According to Section 20(A) of the Bylaws, the Board may, in its discretion, "appoint an Arbitrator or refer to the Ethics Committee for a Panel Review of the charge(s) or appeal(s) described herein."

84. Reusser-Lenhart first learned on January 20, 2025, that nominations for the January 2025 election had already happened among the incumbent Executive Board officers when she saw a post on SIA's Facebook page announcing the candidates in the election.

---

[1] In the companion case of *DeRemer v. SkyWest Inflight Association*, Case No. 2:24-cv-00492-DBB-DBP, the Secretary has alleged that SIA's failure to elect its officers at least once every three years constitutes a violation of the LMRDA.

85. Anna Miroslawska, a SIA member in good standing, first learned about Hurst's disqualification as a candidate in the January 2025 election on January 21, 2025, when she saw the same January 20, 2025, post on SIA's Facebook page. She later spoke with Hurst.

86. Reusser-Lenhart filed her initial protest with SIA at 1:52 a.m. on January 21, 2025.

87. In this initial protest, Reusser-Lenhart wrote:

> I would like to formally inquire and protest the nomination meeting for the upcoming election. I did not receive proper notice of this meeting, nor was I provided an opportunity to participate in the nomination process. . . . I protest this missed opportunity to nominate candidates as I was considering nominating myself and/or Amy Hurst for one of the available positions, but the lack of timely notice and overall opportunity to participate in the nomination process prevented me from doing so. . . . Today I realized that, once again, the board has chosen to nominate solely from within its own ranks. I must protest this issue. . . . Criteria such as occupying a lower board position as a prerequisite for nomination are prohibited under federal law.

88. Miroslawska filed her initial protest with SIA on January 22, 2025.

89. Miroslawska's initial protest stated that SIA failed to allow members to participate and run as candidates in the election.

90. SIA denied Reusser-Lenhart's initial protest on April 15, 2025, because, SIA claimed, it was not timely filed. SIA listed another reason for denial: "vague, lacking clarity and specificity to the extent of being indecipherable and/or requiring interpretative speculation by the reader[.]"

91. SIA also denied Miroslawska's initial protest on April 15, 2025, because, SIA claimed, her allegations were "time-barred" and "vague, lacking sufficient clarity and specificity[.]"

92. Responding to Miroslawska's allegation that SIA did not allow members to participate and run as candidates in the election, SIA wrote:

> As an initial matter, your allegation is rejected as vague and misleading . . . [I]t does not identify anyone who might actually have been harmed by any violation. To the extent the allegation would refer to a Member who is not in good standing, it is actionable and without merit because a Member [who] is not in good standing has no right to "participate" or "run" in an election. You have provided no evidence of any actual, actionable harm to any individual.

93.     Reusser-Lenhart submitted a written appeal to SIA on April 21, 2025: "I am writing to formally appeal the union's unilateral decision regarding my election protest[.] . . . I . . . respectfully request my election protest[] be reevaluated."

94.     Miroslawska also appealed on April 21, 2025, writing: "I am writing to formally appeal the decision regarding [my protest] . . . related to the January 2025 SIA union election. . . . I believe a reevaluation is necessary[.]"

95.     Two-days later, SIA denied both Reusser-Lenhart's and Miroslawska's appeals because, SIA claimed, they "failed to assert [their] rights under SIA's Constitution and Bylaws to request the Board refer [their] claimed concerns to an Arbitrator or Ethics Panel for a final review and binding determination."

**Reusser-Lenhart's and Miroslawska's Complaints are Properly Before DOL**

96.     Miroslawska filed her complaint with the DOL's Office of Labor-Management Standards (OLMS) on April 25, 2025, and incorporated by reference all the issues she internally protested before SIA.

97.     Reusser-Lenhart filed her complaint with OLMS on April 29, 2025, and incorporated by reference all the issues she internally protested before SIA.

98.     Pursuant to Section 601 of the LMRDA, 29 U.S.C. § 521, and in accordance with Section 402(b) of the LMRDA, 29 U.S.C. § 482(b), OLMS investigated Reusser-Lenhart's and Miroslawska's complaints and, as a result of the facts shown by its investigation, found probable

15

cause to believe that a violation of Title IV of the LMRDA had occurred and has not been remedied to date.

99. By agreement signed May 13, 2025, SIA agreed that the time within which the Secretary may bring suit be extended to July 11, 2025.

100. By agreement signed May 20, 2025, SIA agreed that the time within which the Secretary may bring suit be extended to July 21, 2025.

101. By agreement signed July 1, 2025, SIA agreed that the time within which the Secretary may bring suit be extended to August 4, 2025.

102. By agreement signed August 1, 2025, SIA agreed that the time within which the Secretary may bring suit be extended to August 11, 2025.

103. By agreement signed August 11, 2025, SIA agreed that the time within which the Secretary may bring suit be extended to August 18, 2025.

104. By agreement signed August 18, 2025, SIA agreed that the time within which the Secretary may bring suit be extended to August 20, 2025.

**FIRST CAUSE OF ACTION**
*Failure to Provide a Reasonable Opportunity to Nominate*

105. The Secretary repeats and incorporates all previous paragraphs.

106. 29 U.S.C. § 481(e) requires that "[i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates[.]"

107. 29 C.F.R. § 452.56(a) states, "[t]o meet [the nomination notice requirement of 29 U.S.C. § 481(e)], the labor organization must give timely notice reasonably calculated to inform all members of the offices to be filled in the election as well as the time, place, and form for submitting nominations."

108. SIA failed to provide SIA members a reasonable opportunity to nominate candidates in violation of 29 U.S.C. § 481(e) when it: (1) failed to provide notice of nominations for the January 2025 election, and (2) allowed only incumbent Executive Board members to nominate candidates for the January 2025 election.

**SECOND CAUSE OF ACTION**
*Imposition of an Unreasonable Candidate Qualification*

109. The Secretary repeats and incorporates all previous paragraphs.

110. 29 U.S.C. § 481(e) requires that "every member in good standing shall be eligible to be a candidate to hold office (subject to section 504 and to reasonable qualifications uniformly imposed)[.]"

111. 29 C.F.R. § 452.40 states, "A requirement that candidates for office have some prior service in a lower office is not considered reasonable."

112. SIA violated 29 U.S.C. § 481(e) when it required members to have prior experience to be eligible for Executive Leader positions.

**THIRD CAUSE OF ACTION**
*Improper Disqualification of Amy Hurst as a Candidate*

113. The Secretary repeats and incorporates all previous paragraphs.

114. 29 U.S.C. § 481(e) requires that "every member in good standing shall be eligible to be a candidate to hold office (subject to section 504 and to reasonable qualifications uniformly imposed)[.]"

115. 29 C.F.R. § 452.50 provides, in part:

> Section 401(e) was not intended to limit the right of a labor organization to take disciplinary action against members guilty of misconduct. So long as such action is conducted in accordance with Section 101(a)(5), a union may, for example, if its constitution and bylaws so provide, bar from office for a period of time any member who is guilty of specific acts . . . However, if a union has improperly disciplined a member and barred him from candidacy, the Secretary may, in an appropriate case,

17

treat him as a member in good standing entitled to all the rights of members guaranteed by title iv.

116. 29 U.S.C. § 411(a)(5) provides:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare a defense; (C) afforded a full and fair hearing.

117. SIA violated 29 U.S.C. § 481(e) when it disciplined Hurst by disqualifying her from running in the January 2025 election for breaching a duty of loyalty, by failing to provide:

    a. Written specific charges notifying Hurst, among other things, that the proceeding against Hurst only related to the candidate eligibility requirements set forth in Section 14 of SIA's Bylaws, and that penalties could exceed disqualification from running for office in the September 2024 election.

    b. A reasonable time for Hurst to prepare a defense; and

    c. A full and fair hearing that should have, among other things, allowed Hurst to call and cross-examine witnesses, barred France and Coates from participating, and been conducted before an unbiased tribunal that did not prejudge the outcome.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter an Order and Judgment in favor of the Secretary and against SIA as follows:

(a) declaring SIA's January 21-28, 2025, election of National President and National Secretary to be void;

(b) directing SIA to conduct new elections for these offices, including nominations, under the supervision of DOL;

(c) for costs of this action;

  (d)  injunctive relief barring violations of the LMRDA; and

  (e)  for such other relief as may be appropriate.

Dated this 20th day of August, 2025.

                    FELICE JOHN VITI
                    United States Attorney

                    */s/ Joel A. Ferre*
                    JOEL A. FERRE
                    ANNE E. RICE
                    Assistant United States Attorneys

OF COUNSEL:

JONATHAN L. SNARE, Acting Solicitor of Labor
BEVERLY DANKOWITZ, Associate Solicitor
ELEANORE I. SIMMS, Counsel for Labor-Management Policy
CHRISTA HENDERSON, Senior Attorney, U.S. Department of Labor
KEVIN KOLL, Senior Attorney, U.S. Department of Labor
TRACY WOLF, Attorney, U.S. Department of Labor